UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
COURT FILE NUMBER 18-1303 (___/___)

_____

Cindy M. Auld and Scott B. Auld,

       Plaintiffs,

v.

New Penn Financial LLC d/b/a Shellpoint Mortgage Servicing, John Doe, XYZ Corporation,

       Defendant.

**COMPLAINT**

**JURY TRIAL DEMANDED**

_____

Plaintiffs Cindy M. Auld and Scott B. Auld, for their cause of action against Defendants New Penn Financial LLC d/b/a Shellpoint Mortgage Servicing, John Doe, and XYZ Corporation, state and allege as follows:

**THE HOMESTEAD**

1. This action involves the collection of a debt encumbering real estate located at 18850 Diamond Lake Road North, Rogers, MN 55374 and legally described as attached as **EXHIBIT A**. (the "Homestead").

## THE PARTIES

2. Cindy M. Auld and Scott B. Auld are natural persons in possession of the Homestead, occupying the same with their five minor children as their family's homestead.

3. The Aulds reside in Hennepin County and are citizens of the state of Minnesota.

4. New Penn Financial LLC d/b/a Shellpoint Mortgage Servicing (hereinafter, "Shellpoint") is a Delaware company with a Minnesota registered office address at 2345 Rice Street, Suite 203, Roseville, MN 55113.

5. Shellpoint's principal place of business is in Pennsylvania, and, upon information and belief founded upon other United States District Court cases, its members are not citizens of the State of Minnesota.

6. John Doe is an unknown person and employee at Shellpoint, who is expected to be identified specifically as part of discovery.

7. John Doe is believed to be a citizen of the state of Pennsylvania and regularly collects the debts of others.

8. John Doe is believed to the Shellpoint employee who reported the Aulds to the Hennepin County Human Services & Public Health Department for child neglect.

9. XYZ Corporation is an unknown entity, with unknown citizenship, that was hired as an agent of Shellpoint to perform property inspections of the Homestead on behalf of Shellpoint, and that attempted to perform such an inspection in connection with Shellpoint's debt collection efforts on or about July 7, 2017.

10. XYZ Corporation regularly assists in the collection of consumer debts of others as a principal business purpose.

11. Shellpoint, John Doe, and XYZ Corporation all regularly use interstate commerce, interstate wires, and the internet in performance of their debt collection efforts generally, as well as those described specifically herein.

## JURISDICTION AND VENUE

12. This United States District Court has original jurisdiction when the matter in controversy arises under federal law. 28 U.S.C. § 1331.

13. Those claims of this Complaint that do not arise under federal law are appropriately brought for adjudication here pursuant to the United States District Court's supplemental jurisdiction. 28 U.S.C. § 1367.

14. Venue is proper because this action relates to activities related to and occurring on the Homestead located in Minnesota. 28 U.S.C. § 1391(b)(2).

DEBT COLLECTION

15. The Aulds granted a mortgage in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") on April 28, 2005, recorded December 13, 2006 with the Hennepin County Recorder as document number 8906916, that encumbers the Homestead (the "Mortgage").

16. Shellpoint has acted as servicer of the mortgage indebtedness associated with the Mortgage ("Mortgage Debt") starting on or about December 1, 2016 and extending through at least all times relevant to the matters involved in this Complaint.

17. With respect to the Mortgage Debt, the Aulds are consumers.

18. At the time Shellpoint took over servicing of the Mortgage Debt, the Aulds were already in default on the Mortgage Debt.

19. By letter dated December 12, 2016, Shellpoint attempted to send to the Aulds with a validation of debt notice, stating that the Mortgage Debt was owed to another and that the purpose of the letter was to collect a debt owed to another.

20. Shellpoint, by attempting to collect the consumer debts of another, is a debt collector.

21. Shellpoint regularly collects consumer debts as part of its principal business on behalf of others.

22. The Aulds mailed a letter to Shellpoint dated January 13, 2017, asking Shellpoint to "cease and desist" any further contact with the Aulds. See attached as **EXHIBIT B** a true and correct copy of the January 13, 2017 cease and desist letter.

23. On or about February 23, 2017, legal counsel for the Aulds, attorney Bryan Huntington at Larkin Hoffman, sent a letter to Shellpoint via e-mail to lossmitigation@shellpoint.com and United States mail indicating he represented the Aulds.

24. By letter dated March 7, 2017, Shellpoint provided the attorney for the Aulds with a payoff figure.

25. Upon information and belief, representatives of Shellpoint or its agent, XYZ Corporation, on Shellpoint's behalf, visited the Homestead several times, at some points, multiple times a week during the month of March 2017.

26. On or about March 28, 2017, attorney Huntington, on behalf of the Aulds, sent another letter to Shellpoint via e-mail to lossmitigation@shellpoint.com and United States mail, asking Shellpoint to discontinue sending its agents or representatives to trespass on to the Homestead.

27. By letter dated April 3, 2017, Shellpoint provided the Aulds, through their attorney, a loan history summary and a blank loss mitigation application, demonstrating Shellpoint's knowledge of attorney involvement.

28. By letter dated April 19, 2017, Shellpoint provided the Aulds with a written explanation of the Mortgage Debt and provided a copy of its April 3, 2017 correspondence.

29. On or about May 10, 2017, John Doe reported the Aulds to the Hennepin County Human Services & Public Health Department for alleged child maltreatment and neglect.

30. In the May 10, 2017 report, John Doe reported the "[t]he home [had] been taken over by mold" and that he was "concerned for the children's health."

31. In the May 10, 2017 report, John Doe also reported that the mold "is a health hazard" for the children.

32. Upon information and belief, John Doe used information from the Aulds' Mortgage Debt servicing files at Shellpoint in the reporting to Hennepin County Human Services & Public Health Department.

33. For example, John Doe reported to Hennepin County Human Services & Public Health Department that the Homestead was located in Dayton, Minnesota, even though local residents would know that the Homestead is located in Rogers, Minnesota.

34. For example, John Doe reported to Hennepin County Human Services & Public Health Department material concerning the condition of the home that was provided to Shellpoint for purposes of property valuation, that was not otherwise known.

35. John Doe's reporting to Hennepin County Human Services & Public Health Department came at a time when Shellpoint and its employees were

frustrated that the Aulds were unwilling to just "*go along*" with Shellpoint's plans and objectives concerning the Homestead.

36. Upon information and belief, John Doe's reporting to Hennepin County Human Services & Public Health Department was done maliciously as retaliation for the Aulds attempts to maintain their legal rights to their Homestead.

37. John Doe lacked personal knowledge as to the condition of the Homestead.

38. John Doe lacked the information necessary to create a reasonable belief as to the livability of the Homestead.

39. John Doe lacked the information necessary to create a reasonable belief as and whether children were safe to reside within the Homestead.

40. The information John Doe reported to the Hennepin County Human Services & Public Health Department was either made up or exaggerated.

41. The information John Doe reported to the Hennepin County Human Services & Public Health Department, John Doe did not know to be true.

42. By letter dated June 12, 2017, Hennepin County Human Services & Public Health Department confirmed it cleared the Aulds of any wrongdoing.

43. On or about July 7, 2017, a representative from Shellpoint or its agent, XYZ Corporation, with name unknown, trespassed on to the Homestead to inspect the collateral for the Mortgage Debt.

44. This incident was recorded with audio and video.

45. The representative from Shellpoint or its agent, XYZ Corporation, with name unknown, at no time mentioned that his communications were from a debt collector attempting to collect a debt, or that any information obtained would be used for that purpose.

46. The representative from Shellpoint or its agent, XYZ Corporation, with name unknown, was driving a black sedan with Minnesota license plate 614LSA.

47. The representative from Shellpoint or its agent, XYZ Corporation, with name unknown, a white male, got out of his car and approached Scott Auld.

48. The representative from Shellpoint or its agent, XYZ Corporation, with name unknown, told Scott Auld to "contact [his] mortgage company."

49. The representative from Shellpoint or its agent, XYZ Corporation, with name unknown, tells Scott Auld that he is checking on the Homestead "for the mortgage company."

50. By letter dated January 2, 2018, Shellpoint admitted it is "in receipt of a letter dated January 19, 2017, demanding [it ceases] communication with [the Aulds]."

51. Almost a year from the date of the cease and desist letter, by the letter dated January 2, 2018, Shellpoint finally represents "[t]he loan has been updated as cease and desist and [the Aulds] will not receive any further communication from Shellpoint, except that for which is legally required."

### COUNT I: FAIR DEBT COLLECTIONS PRACTICES ACT
### FAILURE TO COMPLY WITH 15 U.S.C. § 1692
### (against Shellpoint and XYZ Corporation)

52. The Aulds incorporate all other allegations of this Complaint as if set forth herein in full.

53. "If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease

further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt." 15 U.S.C. § 1692c(c).

54. Despite receiving and admitting to having received a cease and desist letter from the Aulds dated January 13, 2017, Shellpoint continued to attempt to collect a debt from the Aulds, either directly or indirectly, by having a representative or agent of Shellpoint, XYZ Corporation, speak to the Aulds in person and telling them to speak to their mortgage company.

55. "The failure to disclose . . . that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector" is a violation of 15 U.S.C. § 1692e(11).

56. In the July 7, 2017 confrontation with the Aulds, the representative from Shellpoint or its agent, XYZ Corporation, with name unknown, also failed to provide the warning as described in 15 U.S.C. § 1692e(11).

57. "Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a

debt collector may not communicate with a consumer in connection with the collection of any debt—(2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer." 15 U.S.C. § 1692c.

58. Despite knowledge of ongoing legal representation, Shellpoint and XYZ Corporation continued to communicate directly with Scott Auld orally in telling him to contact his mortgage company.

59. Scott Auld is entitled to a judgment against each Shellpoint and XYZ Corporation for the sum of the actual damages sustained as a result of the violation, $1,000 from each Shellpoint and XYZ Corporation, and costs and reasonable attorney fees. 15 U.S.C. § 1692k.

### COUNT II: FAIR DEBT COLLECTIONS PRACTICES ACT
### FAILURE TO COMPLY WITH 15 U.S.C. § 1692
### (against Shellpoint and John Doe)

60. "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e(1).

61. John Doe knowingly reported a false statement to Hennepin County Human Services & Public Health Department that the Auld children were endangered by the mold on the Homestead.

62. John Doe, as agent or representative of Shellpoint, reported the Aulds to Hennepin County Human Services & Public Health Department, in an attempt to intimidate the Aulds and drive them out of their Homestead so Shellpoint could take over the Homestead.

63. Alternatively, or perhaps concurrently, John Doe, as agent or representative of Shellpoint, reported the Aulds to Hennepin County Human Services & Public Health Department, in retaliation for the Aulds continued attempts to negotiate a resolution with Shellpoint that would allow them to remain in this Homestead.

64. The Aulds have suffered actual damages in the form of intense emotional distress associated with the Hennepin County Human Services &

Public Health Department welfare examination and associated investigation.

65. The Aulds have suffered actual damages in the form of intense emotional distress associated with the aggressive and malicious collection efforts employed by Shellpoint, its agents and employee.

66. The Aulds have suffered sleeplessness, nausea, headaches, and extreme anxiety, as well as other physical manifestations of the stress associated with the actions of Shellpoint, its agents and employee.

67. "[A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—(1) any actual damage sustained by such person as a result of such failure; (2) (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000." 15 U.S.C. § 1692k(a).

68. The Aulds are entitled to a judgment against Shellpoint and XYZ Corporation for the sum of the actual damages they sustained as a result of the violation, and $1,000 from each Shellpoint and John Doe. 15 U.S.C. § 1692k.

69. The Aulds are entitled to reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

### COUNT III: ABUSE OF PROCESS
### (against John Doe and Shellpoint)

70. The Aulds incorporate all other allegations of this Complaint as if set forth herein in full.

71. An abuse of process is "the misuse or misapplication of legal process to accomplish an end other than that which the process was designed to accomplish." *Pow-Bel Constr. Corp. v. Gondek*, 291 Minn. 386, 389, 192 N.W. 2d 812, 814 (1971).

72. John Doe used the legal process of filing a complaint with the Hennepin County Human Services & Public Health Department as an attempt to pressure and oust the Aulds from their Homestead.

73. John Doe falsely deeming the Homestead unsafe to live in.

74. It was in John Doe's interest, as a representative of Shellpoint to oust the Aulds from their home in order to be able to obtain and sell the Homestead.

75. The Aulds have suffered actual damages in the form of intense emotional distress associated with the Hennepin County Human Services &

Public Health Department welfare examination and associated investigation.

76. The Aulds have suffered actual damages in the form of intense emotional distress associated with the aggressive and malicious collection efforts employed by Shellpoint, its agents and employee.

77. The Aulds have suffered sleeplessness, nausea, headaches, and extreme anxiety, as well as other physical manifestations of the stress associated with the actions of Shellpoint, its agents and employee.

78. The Aulds are entitled to an award compensating them for their actual damages.

79. The Aulds are further entitled to reasonable attorneys fees and costs and damages incurred as a result of misuse of process as determined by the court.

**COUNT IV: SLANDER**
**(against John Doe and Shellpoint)**

80. The Aulds incorporate all other allegations of this Complaint as if set forth herein in full.

81. "The elements of a defamation claim are a false statement, communicated to a third-party, and damages." *Lindgren v. Harmon Glass Co.*, 489 N.W.2d 804, 810-11 (Minn. Ct. App. 1992).

82. In the May 10, 2017 report to Hennepin County Human Services & Public Health Department, John Doe stated the "[t]he [Aulds'] home [had] been taken over by mold."

83. In the May 10, 2017 report, John Doe stated that the mold "is a health hazard" to the children.

84. John Doe communicated the statements to third party, Hennepin County Human Services & Public Health Department.

85. John Doe was acting on behalf of Shellpoint when he made the report.

86. John Doe was acting in the interests of Shellpoint when he made the report.

87. The Aulds have been damaged in the form of emotional distress, resulting in sleeplessness, difficulty breathing, body aches, shaking, nausea, and more, due to the stress imposed on their family of the investigation by Hennepin County Human Services & Public Health Department.

88. "The publication of slander is in itself evidence of malice, but, while it is not a publication when the words used are only communicated to the person defamed, they might in such a case be evidence of malice. *Fredrickson v. Johnson*, 60 Minn. 337, 341, 62 N.W. 388, 389 (1895).

89. John Doe had no personal knowledge of the Homestead.

90. John Doe had no reasonable reason to believe the Homestead had been "taken over by mold," or was in a condition presently hazardous to the Aulds' children.

91. The Aulds are entitled to damages as determined by the court for the emotional distress and physical ailments they have suffered caused by John Doe's slander.

## PRAYER FOR RELIEF

WHEREFORE, the Aulds request an order for the following relief:

1. Judgment in favor of the Aulds and against Shellpoint for $1,000.00 for its violation of the Fair Debt Collection Practices Act as determined by 15 U.S.C. § 1692k(a) and the sum of actual damages the Aulds sustained as a result of the violation as determined by the court.

2. Judgment in favor of the Aulds and against XYZ Corporation for

$1,000.00 for its violation of the Fair Debt Collection Practices Act as determined by 15 U.S.C. § 1692k(a) and the sum of actual damages the Aulds sustained as a result of the violation as determined by the court.

3. Judgment in favor of the Aulds and against Shellpoint and XYZ Corporation for reasonable attorney fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

4. Judgment in favor of the Aulds and against John Doe and Shellpoint for damages incurred associated with the abuse of process, including reasonable attorneys fees and costs, as a result of misuse of process as determined by the court.

5. Judgment in favor of the Aulds and against John Doe and Shellpoint for damages as determined by the court for the Aulds' emotional distress and physical issues as a result of John Doe's slander.

6. For all other relief that the Court deems just and equitable.

Dated: <u>May 10, 2018</u>   _____
Jonathan L. R. Drewes (#387327)
DREWES LAW, PLLC
509 First Avenue NE, Suite 2
Minneapolis, MN 55413
T (612) 285-3052
jon@dreweslaw.com
***Attorney for Plaintiffs***