UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Cindy M. Auld and Scott B. Auld,<br><br>Plaintiffs,<br><br>v.<br><br>New Penn Financial LLC (d/b/a Shellpoint Mortgage Servicing); John Doe; Mortgage Contracting Services, LLC; and Champion Property Services, LLC,<br><br>Defendants. | Civil No. 18-cv-1303 (JRT/HB)<br><br>REPORT AND RECOMMENDATION |

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Defendants Mortgage Contracting Services, LLC ("MCS"), and New Penn Financial LLC d/b/a Shellpoint Mortgage Servicing's ("Shellpoint") Motion to Dismiss All Claims for Failure to Prosecute [Doc. No. 85]. The motion was referred to the undersigned for the issuance of a report and recommendation ("R&R") in an Order of Reference dated October 2, 2019 [Doc. No. 89]. For the reasons set forth below, the Court recommends that the motion be denied as to MCS and Shellpoint, but that the claims against Champion Property Services, LLC, be dismissed for failure to prosecute.

**I.   Background**

Much of the background relevant to Defendants' Motion to Dismiss was set forth in this Court's Order on Plaintiffs' Motion to Amend Scheduling Order and Extend Pretrial Deadlines. (Order at 1–11, Nov. 14, 2019 [Doc. No. 109].) The Court will recite

1

(mostly)[1] verbatim from that Order in Parts I.A through I.D *infra*. Part I.E *infra* recounts additional background information.

### A. The Initial Complaint

Plaintiffs Cindy M. Auld and Scott B. Auld initially filed suit on May 10, 2018, against Shellpoint, "XYZ Corporation," and "John Doe." (Compl. [Doc. No. 1].) They alleged that Shellpoint has been the servicer of Plaintiffs' mortgage debt since December 1, 2016. (*Id.* ¶ 16.) At that time, Plaintiffs were already in default on the mortgage debt. (*Id.* ¶ 18.) Shellpoint allegedly hired XYZ Corporation to inspect Plaintiffs' home on behalf of Shellpoint, and at least one attempted inspection occurred on July 7, 2017. (*Id.* ¶ 9.) Plaintiffs alleged that representatives of Shellpoint or XYZ Corporation also visited their home several times during the month of March 2017. (*Id.* ¶ 25.)

According to the initial complaint, John Doe was an employee of Shellpoint and inspected their property on or about May 10, 2017. (*Id.* ¶¶ 6, 29.) John Doe allegedly wrote in his report that he had discovered mold in the home, which he considered a health hazard to Plaintiffs' children. (*Id.* ¶¶ 30, 31.) John Doe allegedly reported Plaintiffs to the Hennepin County Human Services & Public Health Department for child maltreatment and neglect. (*Id.* ¶¶ 8, 29.) Plaintiffs believed John Doe used information from their mortgage debt servicing file in the report to Hennepin County. (*Id.* ¶ 32.) The Hennepin County Human Services and Public Health Department later cleared Plaintiffs of any wrongdoing. (*Id.* ¶ 42.)

---

[1] The Court made a few minor formatting and stylistic adjustments to adapt the information to the context of the motion to dismiss.

Plaintiffs alleged that John Doe made the report of child neglect not for legitimate reasons but because Plaintiffs were unwilling to comply with Shellpoint's plans concerning their home. (*Id.* ¶ 35.) Plaintiffs contend John Doe's report to Hennepin County was made without personal knowledge (*id.* ¶ 37), and was a false, deceptive, or misleading representation in connection with the collection of a debt in violation of the Fair Debt Collection Practices Act (*id.* ¶¶ 60–61).

Shellpoint answered on July 31, 2018, and admitted having arranged for inspections of Plaintiffs' home but denied any involvement in the report to Hennepin County. (Answer ¶¶ 8–9 [Doc. No. 7].) The Court entered a Pretrial Scheduling Order on September 10, 2018, setting, *inter alia,* a deadline of October 26, 2018, for any motions for leave to amend the pleadings or to add parties; a deadline of May 20, 2019, for the completion of all fact discovery; and a deadline of May 28, 2019, for any other nondispositive motions. (Pretrial Scheduling Order at 2 [Doc. No. 11].)

**B.      Initial Discovery Efforts and the First Amended Complaint**

Since filing their original complaint, Plaintiffs have been trying to identify the John Doe who conducted the home inspection on May 10, 2017, so they can serve him and determine whether he is in fact the individual who made the report to Hennepin County. (*See* Pls.' Mem. Supp. Mot. Amend at 8 [Doc. No. 92].) They served written discovery on Shellpoint on September 12, 2018. (Kelly Aff. Ex. Q [Doc. No. 94-17].) Shellpoint responded on October 22 and stated that it had retained MCS to provide property inspection services, including the inspection of Plaintiffs' property. (Kelly Aff. Ex. L at 6 [Doc. No. 94-12].) The responses identified MCS as well as Champion

3

Property Services, LLC, Dustin O'Dell, and "John Waldren"[2] as having knowledge pertinent to "the inspection of Plaintiffs' home, Plaintiffs' claims, and Defendant's defenses."[3] (*Id.* at 4–5.) In addition, Shellpoint stated that "Dustin O'Dell of Champion Property Services, LLC" had provided an account of the property inspection that occurred on July 7, 2017, and it produced that account, bearing Bates No. DEF_000001, with its responses to Plaintiffs' document requests:

> Good morning,
>
> On 7/7/17 our inspector John Waldron went to the property to do the inspection, the home owner was in the driveway and said he would not move so that our inspector could get a picture of the front of house, he then sat in the driveway in his truck preventing access.
>
> John will not give me a statement and can't remember a year ago on what happened or anything said. John worked as an inspector for us for a period of 6 months.
>
>     Dustin O'Dell
>     Champion Property Services, LLC

(*Id.* at 4; Armstrong Aff. Ex. B at 2 [Doc. No. 102-2].)

Shellpoint also produced reports of the monthly inspections of Plaintiffs' property, including a report of a May 10, 2017, inspection; however, the reports did not identify the

---

[2] The Court notes that MCS and Shellpoint generally spell this surname as "Waldren," but his former employer, Dustin O'Dell, spelled it as "Waldron" in his affidavit. (O'Dell Aff. [Doc. No. 93].) The Court will use the latter spelling except where quoting directly.

[3] Shellpoint's initial disclosures, served on September 20, 2018, also identified Champion Property Services LLC, Dustin O'Dell, and "John Waldren" as having knowledge of these matters, although the initial disclosures provided contact information in Ohio. (Armstrong Aff. Ex. A at 2 [Doc. No. 102-1].) Shellpoint's counsel acknowledged at the motion hearing that the Ohio contact information was erroneous, but Plaintiffs' counsel acknowledged at the hearing that they never attempted to find or serve Champion Property Services at that location.

name of the individuals or firms that conducted the various inspections.  (Kelly Aff. Ex. N at 102 [Doc. No. 94-14].)  Shellpoint did not provide an address or other contact information for Champion Property Services, LLC, Dustin O'Dell, or "John Waldren."  (*Id.*)

On December 7, 2018, Plaintiffs amended their complaint to add MCS and a Minnesota entity by the name of Champion Property Services LLC ("Champion Minnesota") as defendants.  [Doc. No. 22.]  The First Amended Complaint contained essentially the same allegations concerning John Doe as the initial complaint.  In addition, the First Amended Complaint indicated that MCS was the company identified as XYZ Corporation in the initial complaint that had performed property inspections of Plaintiffs' home on Shellpoint's behalf.  (First. Am. Compl. ¶ 9.)  Plaintiffs further alleged that Shellpoint also hired Champion Minnesota to perform property inspections of their home.  (*Id.* ¶ 11.)  Plaintiffs named John Waldron as the individual who inspected their property on or about July 7, 2017, and described him as a representative of Shellpoint, MCS, or Champion Minnesota.  (*Id.* ¶ 45.)

Shortly thereafter, Plaintiffs filed a motion to enforce a subpoena they had served two months earlier on Hennepin County, pursuant to which they sought documents relating to the May 2017 report of suspected child neglect.  [Doc No. 24.]  Hennepin County had produced responsive documents on September 21, 2018, but, pursuant to Minn. Stat. § 626.556, subd. 11(a), had redacted any reference to the identity of the reporting party.  Plaintiffs sought to compel Hennepin County to produce unredacted documents so that they could find out who the reporter was and therefore determine

whether the reporter was, as they suspected, affiliated with any of the entities involved in servicing Plaintiffs' mortgage or inspecting their home.  The Court denied the motion without prejudice, holding that Plaintiffs should first "exhaust[] other reasonable means of identifying the Shellpoint employee or representative who allegedly inspected the home on May 10 and made the child welfare report to the County." (Order at 5, Jan. 9, 2019 [Doc. No. 38].)  The Court went on to state:

> If those efforts prove unsatisfactory or inconclusive, Plaintiffs may renew their motion, and the Court would consider ordering an *in camera* disclosure of the reporter's name for the purpose of comparing it with the names of Defendants' employees and representatives known to have been involved in the home inspection.  But it is not lost on the Court that if the reporter is not who or what Plaintiffs think, and was not affiliated with or acting on behalf of any of the Defendants in this case, then the identity of the reporter is irrelevant to Plaintiffs' claims.

(*Id.* at 5–6.)

Pursuant to a stipulation granting an extension of time to answer, MCS answered the amended complaint on January 29, 2019, and denied having performed any inspections of Plaintiffs' home and any involvement in the report to Hennepin County. (MCS Answer ¶¶ 9, 27, 31, 45 [Doc. No. 40].)  Champion Minnesota did not answer the amended complaint until two months later, and it also denied having had anything at all to do with inspecting Plaintiffs' home or the report to Hennepin County.  (Champion Minnesota Answer ¶¶ 2, 6 [Doc. No. 49].)

Plaintiffs reported at a status conference held on April 5, 2019, that they were taking steps to determine whether Champion Minnesota was a correct defendant and, if not, would move to further amend their complaint to name the correct party.  (*See* Ct.

Mins., Apr. 5, 2019 [Doc. No. 49].)[4]

### C.   Subsequent Discovery Efforts and the Second Amended Complaint

On April 3, 2019, more than two months after MCS answered the amended complaint and about seven weeks before the fact discovery deadline, Plaintiffs for the first time served written discovery on MCS.  (Loringer Aff. ¶ 2 [Doc. No. 104].) MCS responded on May 10 and produced, among other things, a contract for property inspection services between MCS and a *Missouri* entity that also went by the name of Champion Property Services LLC ("Champion Missouri").[5]  (Kelly Aff. Ex. I at 2 [Doc. No. 94-9]; Loringer Aff. ¶ 3.)  In the meantime, however, Plaintiffs had apparently concluded that Champion Missouri, not Champion Minnesota, was the correct defendant, and on May 6, 2019, they moved for leave to file a second amended complaint that removed Champion Minnesota and added Champion Missouri as a defendant to the action.  [Doc. No. 50.]  Plaintiffs also moved for a modification to the Pretrial Scheduling Order to extend the time for discovery.  [*Id.*]

On June 6, 2019, the Court granted Plaintiffs' motion to file their second amended complaint, but ordered Plaintiffs promptly to arrange for service on Champion Missouri.

---

[4]  At the same status conference, there was also discussion of the "upcoming deposition of the Hennepin County investigator" and whether Plaintiffs' counsel would be inquiring at that deposition about the identity of the person who reported suspected child neglect. (*See* Ct. Mins., Apr. 5, 2019.)  The record does not reflect whether that deposition ever took place or, if so, what was learned.

[5]  Plaintiffs served additional discovery requests on MCS on May 2, 2019, to which MCS responded on June 3, although they note that the requests were technically out of time in light of the May 20, 2019, deadline for the completion of fact discovery. (Loringer Aff. ¶ 6.)

7

(Ct. Mins. at 1 [Doc. No. 68].)  The Court also granted Plaintiffs' motion to extend the discovery deadline, but only for purposes of allowing discovery to be conducted by and on Champion Missouri.  (*Id.*)  The Court denied Plaintiffs' motion insofar as it sought additional time for discovery on the existing Defendants on the ground that Plaintiffs had not shown diligence in completing discovery on those Defendants in the time allotted, although it made an exception for Plaintiffs to conduct a Rule 30(b)(6) deposition of Defendant MCS that had already been arranged between the parties but had not yet occurred.[6]  (*Id.* at 1–2.)

Meanwhile, on June 5, 2019, Plaintiffs attempted to file a second motion to compel Hennepin County to comply with their subpoena.  [Doc. No. 61.]  The Court identified several respects in which the motion failed to comply with the Local Rules, but gave Plaintiffs an opportunity to supplement the motion in order to correct those deficiencies.  (Text Only Order, June 6, 2019 [Doc. No. 69].)  Instead, Plaintiffs withdrew the motion altogether, without explanation.  [Doc. No. 71.]

### D. Plaintiffs Make Contact With Champion Missouri and Bring a Motion Seeking Additional Time for Discovery

It took some time for Plaintiffs to effect service on Champion Missouri.  On July 24, the Court ordered Plaintiffs to update the Court on the status of service.  [Doc. No. 77.]  Plaintiffs filed a return of service the same day reporting that Champion Missouri had been served on July 2.  [Doc. No. 78.]  But when by July 29, Champion

---

[6] Plaintiffs' counsel acknowledged at the motion hearing that they did not subsequently take that deposition.  Plaintiffs apparently did, however, take a deposition of a representative from Shellpoint.  (*See* Kelly Aff. Ex. P [Doc. No. 94-16].)

Missouri had not answered or otherwise responded to the Second Amended Complaint, the Court issued another order requiring Plaintiffs to notify Champion Missouri of its obligation to respond to the complaint and, if Champion Missouri still did not appear, to make an application for default no later than twenty days from the date of the order. [Doc. No. 79.]  The order stated that "[f]ailure to comply with this Order may result in dismissal of this action for failure to prosecute."  [*Id.*]

Plaintiffs and Champion Missouri agreed to an extension of time until September 3 for Champion Missouri to answer or otherwise respond.  (Stipulation [Doc. No. 82]; *see also* Order on Stipulation [Doc. No. 84].)  But September 3 came and went with no appearance by Champion Missouri and no application for default, and on September 30, MCS moved to dismiss the entirety of Plaintiffs' action for failure to prosecute.  [Doc. No. 85.]

Shortly thereafter, Plaintiffs filed a motion seeking to reopen discovery against MCS and Shellpoint.  Plaintiffs recounted that once they found Champion Missouri, they made contact with its principal, Dustin O'Dell.  (Pls.' Mem. Supp. Mot. Amend Schedule at 4 [Doc. No. 92].)  In an affidavit submitted in support of Plaintiffs' motion, O'Dell states that MCS had contracted with Champion Missouri to perform some of the property inspections on Plaintiffs' home during the relevant time period.  (O'Dell Aff. ¶ 6 [Doc. No. 93].)  Champion Missouri, in turn, hired various independent contractors via Craigslist or Facebook ads to perform the actual inspections.  (*Id.*)  One of those independent contractors was John Waldron.  (*Id.*)  O'Dell's records reflect that Waldron performed several inspections of Plaintiffs' home for Champion Missouri, including the

9

inspection that took place on July 7, 2017. (*Id.* ¶ 7.) Other independent contractors retained by Champion Missouri performed other inspections of Plaintiffs' home. (*Id.* ¶ 8.) But, O'Dell avers, Champion Missouri's records reflect that it did *not* arrange for Waldron or anyone else to conduct the May 2017 inspection—the one that allegedly coincided with the child neglect report to Hennepin County. (*Id.* ¶ 11.) O'Dell notes, however, that MCS had a practice of using different inspection services on the same property to serve as a "cross-check" on the subcontracted inspector, and so he assumes MCS retained a firm other than Champion Missouri to conduct the May 2017 inspection. (*Id.* ¶¶ 9, 10). He does not know which firm or individual handled the May 2017 inspection of Plaintiffs' home, nor does he know who made the report to Hennepin County. (*Id.* ¶¶ 12, 14.)

O'Dell also states in his affidavit that he has never had contact with Shellpoint, but that MCS had been in touch with him sometime before October 23, 2018, seeking information about Waldron, inspections of Plaintiffs' residence, and the Plaintiffs' lawsuit. (*Id.* ¶¶ 15, 18.) He states that MCS had current contact information for him, and that it was to MCS that he sent, by email, the content reflected in the document produced by Shellpoint regarding Waldron's July 2017 inspection of Plaintiffs' property. (*Id.* ¶¶ 15–18 and Ex. A [Doc. No. 93 at 7].)[7]

Based on the information provided by O'Dell, Plaintiffs no longer believe Champion Missouri employed John Doe for the relevant inspection. Thus, they are once

---

[7] Exhibit A to O'Dell's Affidavit is the same document produced by Shellpoint as DEF_000001. (*See also* Armstrong Aff. Ex. B at 2 [Doc. No. 102-2].)

again in search of the entity that can identify John Doe and contend they need additional discovery from MCS and Shellpoint to assist them in doing so.[8] (*See* Pls.' Mem. Supp. Mot. Amend at 8.)

### E.     Additional Background

Yesterday, the Court issued an order on Plaintiffs' motion to amend the pretrial schedule. [Doc. No. 109.] The Court found that Plaintiffs failed to show they were diligent in seeking additional information from Defendants during the discovery period set by the scheduling order, and further failed to show that they were diligent in attempting to identify and locate John Doe. The Court was troubled, however, by the apparent carelessness with which MCS's interrogatory responses had been prepared, as evidenced by the inaccurate response about third party communications, as well as by the absence from its production of an email from Dustin O'Dell by which (accepting MCS's representation as to form) the Word document produced as DEF_000001 must have been transmitted to MCS. Furthermore, unlike Shellpoint, MCS did contract directly with the firm or firms that conducted inspections on Plaintiffs' property. O'Dell's affidavit indicated there may have been more than one such firm during the relevant time period, yet MCS identified and produced a contract for only Champion Missouri. Therefore, the

---

[8] Plaintiffs' counsel stated at the hearing that O'Dell has told them he does not have even "last known" contact information for Waldron. The Court is skeptical of O'Dell's claim in this regard, as O'Dell apparently knew how to get in touch with Waldron in October 2018 when O'Dell obtained Waldron's account of the July 7, 2017, inspection set forth in Exhibit A to O'Dell's affidavit, and had retained sufficient records of his business to identify the dates on which his firm had been retained to conduct inspections of Plaintiffs' home.

Court held in abeyance Plaintiff's motion to amend the scheduling order and ordered MCS to complete several tasks to ensure that all responsive information concerning any entity other than Champion Missouri with which MCS contracted to perform inspections of Plaintiffs' home in 2017 has been produced.

## II. Defendants MCS and Shellpoint's Motion to Dismiss

Defendants MCS and Shellpoint move to dismiss all claims against them, based on Plaintiffs' alleged failure to timely identify proper defendants and delay in moving the case forward after Champion Missouri failed to answer or otherwise respond. (Defs.' Mem. Supp. Mot. Dismiss at 4 [Doc. No. 86].) MCS and Shellpoint submit that Plaintiffs' conduct demonstrates a failure to prosecute that warrants dismissal under Federal Rule of Civil Procedure 41(b). Plaintiffs respond that any delays are at least partially attributable to Defendants' conduct in discovery. (Pls.' Mem. Opp'n Mot. Dismiss at 2 [Doc. No. 97].) Plaintiffs also explain in their memorandum they have not moved for default against Champion Missouri because they recently learned that Champion Missouri has been in contact via email with MCS for most of the duration of this case and because Champion Missouri has provided key information to Plaintiffs concerning MCS. (*Id.*)

Federal Rule of Civil Procedure 41(b) permits dismissal with prejudice "[i]f the plaintiff fails to prosecute or comply with these rules or a court order." Fed. R. Civ. P. 41(b). The Eighth Circuit has "recognized that dismissal with prejudice is an extreme sanction that should be used only in cases of willful disobedience of a court order or where a litigant exhibits a pattern of intentional delay." *Hunt v. City of Minneapolis*,

12

203 F.3d 524, 527 (8th Cir. 2000). "Under Rule 41(b), the focus is foremost on the egregiousness of the plaintiff's conduct, and only to a lesser extent on the prejudice to the defendant or the administration of justice in the district court." *Burgett v. Gen. Store No. Two, Inc.*, 727 F. App'x 898, 900 (8th Cir. 2018). Any sanction imposed under Rule 41(b) must be proportionate to the litigant's transgression. *Rodgers v. Curators of Univ. of Mo.*, 135 F.3d 1216, 1219 (8th Cir. 1998).

Although the Court has found that Plaintiffs have not been diligent in identifying the proper defendants and John Doe, there has not been a complete failure to prosecute their claims against MCS and Shellpoint, and therefore the Court finds that Plaintiffs' conduct does not rise to the level of egregiousness that would merit dismissal of their claims against MCS and Shellpoint. Furthermore, as the Court concluded in its contemporaneous order, there is a legitimate concern that MCS's discovery responses may not have been accurate when served and that information going to the heart of identifying the entity or individual who conducted the May 10, 2017 inspection could have been overlooked. If that concern is assuaged, the Court can address the Defendants' legitimate interests in moving without additional delay toward a conclusion of the case through its final order on Plaintiffs' motion to amend the scheduling order. The Court therefore recommends that Defendants' motion to dismiss pursuant to Rule 41(b) be denied.

### III.   Plaintiffs' Failure to Prosecute Their Action Against Champion Missouri

Champion Missouri was served on July 2, 2019. [Doc. No. 78.] On July 29, the Court ordered Plaintiffs to notify Champion Missouri of its obligation to respond to the

complaint and, if Champion Missouri still did not appear, to make an application for default no later than twenty days from the date of the order.  [Doc. No. 79.]  The order stated that "[f]ailure to comply with this Order may result in dismissal of this action for failure to prosecute." [*Id.*]  Plaintiffs and Champion Missouri agreed to an extension of time until September 3 for Champion Missouri to answer or otherwise respond. (Stipulation [Doc. No. 82]; *see also* Order on Stipulation [Doc. No. 84].)  But as of the date of this Report and Recommendation, there has been no appearance by Champion Missouri and no application for default.  Instead, Plaintiffs have given every indication they have concluded Champion Missouri is not the correct defendant in this case. Plaintiffs may not hold up the action against MCS and Shellpoint by leaving their claims against Champion Missouri in limbo.  Accordingly, the Court concludes Plaintiffs have failed to prosecute their claims against Champion Missouri, and it recommends that the claims against Champion Missouri be dismissed for failure to prosecute.  However, because it is possible other information about Champion Missouri may come to Plaintiffs' attention in the future, the Court recommends that the dismissal be without prejudice, leaving Plaintiffs the opportunity to file a *new* case against Champion Missouri.[9]

Accordingly, based on the above and all the files, records, and proceedings herein,

---

[9] To be clear, the Court would not entertain another motion to amend Plaintiffs' complaint to add Champion Missouri back in this case.  They have forfeited that opportunity.

**IT IS HEREBY RECOMMENDED** that:

1. Defendants Mortgage Contracting Services, LLC, and New Penn Financial LLC d/b/a Shellpoint Mortgage Servicing's Motion to Dismiss All Claims for Failure to Prosecute [Doc. No. 85] be **DENIED**; and

2. Plaintiffs' claims against Champion Property Services, LLC, be **DISMISSED WITHOUT PREJUDICE**.


Dated: November 15, 2019
       s/ *Hildy Bowbeer*
       HILDY BOWBEER
       United States Magistrate Judge


**NOTICE**

The Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).